ATTORNEY GENERAL LOVING HAS ASKED ME TO RESPOND TO YOUR REQUEST THAT OUR OFFICE ADDRESS ITEMS A THROUGH E UNDER "RECOMMENDATION" ON PAGE 6 OF THE OKLAHOMA TOURISM AND RECREATION DEPARTMENT FINAL REPORT ISSUED BY THE STATE AUDITOR AND INSPECTOR ON APRIL 9, 1992. FINAL AUDIT ITEMS A THROUGH E ARE AS FOLLOWS:
(SEE TEXT — PARK OPERATIONS) 74 O.S. 1861.A
BECAUSE THE RESPONSE TO YOUR REQUEST REQUIRES FACTUAL DETERMINATIONS, I AM ANSWERING YOUR REQUEST THROUGH THIS INFORMAL LETTER. THE DISCUSSION WHICH FOLLOWS IS NOT AN OFFICIAL OPINION OF THE ATTORNEY GENERAL. THE FOLLOWING ANALYSIS AND CONCLUSIONS, HOWEVER, HAVE BEEN REACHED AFTER CAREFUL RESEARCH OF THE QUESTIONS YOU HAVE RAISED.
THE 1989 ENACTMENT OF 74 O.S. AMENDMENT TO 1861, AND "THE OFFICIAL STATEMENT, $5,000,000, OKLAHOMA TOURISM AND RECREATION DEPARTMENT, SYSTEM REVENUE BONDS, SERIES 1990," PROVIDE THE CONTEXT IN WHICH YOUR QUESTIONS MUST BE ANSWERED.
THE 1989 ENACTMENT READS IN PERTINENT PART:
 "THE COMMISSION SHALL DISTRIBUTE EIGHTY PERCENT (80%) OF THE NET BOND PROCEEDS TO EXISTING STATE PARKS. . . . THE REMAINING TWENTY PERCENT (20%) OF THE NET PROCEEDS SHALL BE DISTRIBUTED TO NEW PARK OPERATIONS AND IMPROVE EXISTING PARKS WITH LOW REVENUE GENERATION. 74 O.S. 1861 (1989) (EMPHASIS ADDED.)"
THE 1990 AMENDMENT RESULTED IN THE FOLLOWING CHANGE:
 "THE REMAINING TWENTY PERCENT (20%) OF THE NET PROCEEDS SHALL BE DISTRIBUTED FOR CAPITAL IMPROVEMENTS IN NEW PARKS OR TO IMPROVE EXISTING PARKS WITH LOW REVENUE GENERATION. 74 O.S. 1861 (1990) (EMPHASIS ADDED.)"
THE 1990 AMENDMENT DELETED LANGUAGE "TO NEW PARK OPERATIONS AND," SUBSTITUTING THE LANGUAGE "FOR CAPITAL IMPROVEMENTS IN NEW PARKS OR."
THE OFFICIAL STATEMENT OF THE 1990 BONDS READS, INTER ALIA:
 "EIGHTY PERCENT (80%) OF THE NET PROCEEDS WILL BE UTILIZED TO FUND IMPROVEMENTS TO PARKS BASED UPON THE REVENUE AND ATTENDANCE AT EACH PARK. THE REMAINING TWENTY PERCENT (20%) WILL BE EXPENDED ON NEW PARK OPERATIONS AND IMPROVEMENTS TO PARKS WITH LOW REVENUE GENERATION."
THE FIRST QUESTION ASKS THE MEANING OF THE LANGUAGE "NEW PARK OPERATIONS" WHICH APPEARED IN 74 O.S. 1861 (1989). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY DEFINES NEW AS "BEING OTHER THAN THE FORMER OR OLD" AND FORMER AS "OCCURRING IN THE PAST." BOTH THE 1990 ENACTMENT AND THE 1990 AMENDMENT CONTRAST "NEW PARK OPERATIONS" AND "EXISTING PARKS" TO WHICH 80 OF THE PROCEEDS ARE TO BE DISTRIBUTED. THEREFORE, THE TERMS "NEW PARK OPERATIONS" WOULD NOT INCLUDE THE EXPANSION OF EXISTING FACILITIES. PUTTING THE 80%-20% LANGUAGE IN CONTEXT, 80 WAS BEING SET ASIDE FOR EXISTING PARKS AND 20% WAS BEING SET ASIDE FOR NEW PARKS AND IMPROVING PARKS WITH LOW REVENUE GENERATION. THE LEGISLATURE DID NOT SPECIFY WHAT PORTION OF THE 20% WOULD GO TO "NEW PARKS" AS OPPOSED TO "EXISTING PARKS WITH LOW REVENUE GENERATION." THE LEGISLATURE DID SPECIFY THAT A TOTAL OF 20% OF THE NET PROCEEDS WAS TO BE SPENT ON THESE TWO TYPES OF FACILITIES.
THE SECOND QUESTION ASKS WHETHER "ADMINISTRATION, PLANNING AND DEVELOPMENT COSTS" OF THE TOURISM DEPARTMENT COULD BE PAID FOR BY BOND PROCEEDS. THE STATUTE IS SILENT AS TO WHETHER OR NOT THESE COSTS WOULD BE PERMISSIBLE EXPENDITURES. IN MY REVIEW OF THE BOND TRANSCRIPT, I FOUND NO MENTION OF USING BOND PROCEEDS FOR ANY OF THESE PURPOSES. FURTHERMORE, TOM SPENCER, WHO WAS THE ASSISTANT ATTORNEY GENERAL RESPONSIBLE FOR APPROVING THE BOND TRANSACTION, COULD NOT RECALL ANYONE WITH THE TOURISM DEPARTMENT OR PERSONS CONNECTED WITH THE BOND ISSUE, HAVING RAISED THIS ISSUE.
WITHIN ARTICLE IV, SECTION 4.01A OF THE BOND INDENTURE WE FIND:
 "THE PROJECT FUND SHALL BE CREATED WITH THE STATE TREASURER AND USED TO RECEIVE THE PROCEEDS OF THE BONDS AND MAKE THE PAYMENTS AND TRANSFERS AS SET OUT IN 3.15 HEREOF AND TO PAY THE COST OF ACQUIRING. CONSTRUCTING AND EQUIPPING CERTAIN IMPROVEMENTS TO THE SYSTEM UPON RECEIPT OF A PAYMENT REQUISITION IN ACCORDANCE WITH STATE PURCHASING AND REQUISITION PROCEDURES AS REQUIRED BY THE STATE OFFICE OF PUBLIC AFFAIRS AND THE OFFICE OF STATE FINANCE AND ANY ACCOMPANYING CERTIFICATES REQUIRED BY THE STATE TREASURER. (EMPHASIS ADDED.)"
ADMINISTRATIVE COSTS COULD BE CONSTRUED TO BE PART OF THE "COST OF ACQUIRING CONSTRUCTING AND EQUIPPING IMPROVEMENTS" TO THE EXTENT THAT SUCH COSTS ARE DIRECTLY ATTRIBUTABLE TO THE PROJECT AND ARE NOT EXISTING OVERHEAD ITEMS THAT WOULD HAVE BEEN INCURRED IRREGARDLESS OF THE PROJECT. THE BURDEN OF PROOF TO JUSTIFY THE VALIDITY OF CHARGING SUCH OVERHEAD ITEMS AGAINST THE BOND PROCEEDS RESTS WITH THE DEPARTMENT OF TOURISM.
THEREFORE, "ADMINISTRATION, PLANNING AND DEVELOPMENT COSTS" DIRECTLY ATTRIBUTABLE TO THE PROJECT CAN BE PAID WITH BOND PROCEEDS.
III.
THE THIRD QUESTION CONCERNS THE EFFECT OF THE LEGISLATIVE AMENDMENT OF 1861.A SEVERAL MONTHS AFTER THE BOND CLOSING AND BOND SALE. FROM A READING OF THE AMENDMENT, IT APPEARS THAT THE LEGISLATURE DID NOT EFFECT A MATERIAL CHANGE IN THE STATUTE. RATHER THE LEGISLATURE ATTEMPTED TO CLARIFY ITS INTENT. SEE BOARD OF EDUCATION VICI PUBLIC SCHOOL V. MORRIS, 656 P.2D 258 (OKLA. 1982).
THE OKLAHOMA SUPREME COURT HAS HELD THAT THE LEGISLATURE CANNOT MAKE A MATERIAL CHANGE TO A STATUTE GOVERNING THE DISPOSITION OF THE PROCEEDS OF A BOND ISSUE IF THE BOND ISSUE IS A "PROCEEDINGS BEGUN" WITHIN THE MEANING OF OKLA. CONST. ARTICLE V, SECTION 54 SEE IN RE: A PLICATION OF BOARD OF EDUCATION OF WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. 41 OKLAHOMA COUNTY, 565 P.2D 677 (OKLA. 1977). A CLOSED BOND ISSUE WOULD CERTAINLY QUALIFY AS A "PROCEEDINGS BEGUN." THEREFORE, THE AMENDMENT OF 1861.A DOES NOT ALTER THE ALLOCATION REQUIREMENTS CONTAINED IN THE OFFICIAL STATEMENT.
IV.
THE FOURTH QUESTION ASKS GENERALLY IF THERE ARE ANY INCONSISTENCIES BETWEEN THE OFFICIAL STATEMENT AND THE STATUTE. IN MY REVIEW, I DID NOT FIND ANY CONFLICT BETWEEN THE OFFICIAL STATEMENT AND THE STATUTE AS TO THE ALLOCATION AND/OR EXPENDITURES OF THE BOND PROCEEDS.
THE FIFTH QUESTION CONCERNING HOW THE INTEREST EARNINGS FROM THE BOND PROCEEDS ARE TO BE ALLOCATED AND SPENT REQUIRES, ONCE AGAIN, A READING OF THE OFFICIAL STATEMENT. THE STATEMENT READS IN PERTINENT PART:
 "THE PROCEEDS OF THE 1990 BONDS, TOGETHER WITH EARNINGS ON THE PROJECT FUND AND THE BOND RESERVE FUND DURING CONSTRUCTION, ARE TO BE UTILIZED IN PART TO PROVIDE FUNDS FOR VARIOUS IMPROVEMENTS TO STATE PARKS THROUGHOUT THE STATE (THE "PROJECT"). "OFFICIAL STATEMENT," PG. 7 (EMPHASIS ADDED)."
THE "IN PART" LANGUAGE NEEDS CLARIFICATION. THE FOLLOWING IS FOUND ON PG. 8 OF THE "OFFICIAL STATEMENT":
(INFORMATION REGARDING ESTIMATED SOURCES AND USES OF FEES)
COST OF ISSUANCE CALLS FOR AN EXPENDITURE OF $110,000. THE BOND RESERVE FUND IS TO BE $500,000. ALL OTHER BOND PROCEEDS AND INTEREST ARE TO BE PLACED IN THE PROJECT FUND. THEREFORE, IF THE BOND RESERVE FUND FALLS BELOW $500,000, THE INTEREST REMAINS IN THAT FUND. IF IT IS AT $500,000 IT WILL BE DISTRIBUTED AS SET FORTH IN SECTION 4.01 C (3). THE EXPENDITURE OF THE INTEREST WOULD BE THE SAME AS THE FUND OR ACCOUNT TO WHICH IT IS DISTRIBUTED. INTEREST, THEREFORE, IS TO BE EXPENDED IN THE SAME MANNER AND PROPORTION AS THE BOND PROCEEDS.
CONCLUSION
IT IS, THEREFORE, MY OPINION THAT:
 THE TERM "NEW PARK OPERATIONS" DOES NOT INCLUDE THE EXPANSION OF EXISTING FACILITIES. THE LEGISLATURE INTENDED THAT TWENTY PERCENT (20%) BE SPENT ON NEW PARKS AND EXISTING PARKS WITH LOW REVENUE GENERATION.
 2. ADMINISTRATIVE, PLANNING AND DEVELOPMENT COSTS DIRECTLY ATTRIBUTABLE TO THE PROJECT CAN BE PAID WITH BOND PROCEEDS.
 3. THE 1990 AMENDMENT OF 74 O.S. 1861 (1989) DID NOT ALTER THE ALLOCATION REQUIREMENTS CONTAINED IN THE OFFICIAL STATEMENT.
 4. THERE ARE NO INCONSISTENCIES BETWEEN THE OFFICIAL STATEMENT AND 74 O.S. 1861
(JAMES D. BEDNAR)